UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SCHAL BOVIS, INC., <br><br> Defendant. | No. 11 CV 0992 <br><br> Judge Manish S. Shah |

## ORDER

Plaintiffs' motion for entry of final judgment [48] is granted in part. The court finds that defendant is liable for: $28,520.25 in damages for non-union subcontracting liability, plus an amount based on the jurisdictional work reflected in defendant's construction schedules for the Canac Kitchens portion of the case (which the court currently estimates to be an additional $129,225.50); $2,849.04 in auditors' fees; and $49,226.44 in attorneys' fees and costs. If the parties have new objections to the court's calculation of the Canac Kitchens liability, they shall file supplemental, simultaneous objections by 10/6/2014. Plaintiffs shall also file a revised double-interest calculation by 10/6/2014. Status hearing remains set for 10/8/2014 at 9:30.

## STATEMENT

Plaintiffs are multi-employer plans for the benefit of union carpenters, and defendant Schal Bovis is liable to plaintiffs for unpaid fringe benefit contributions (based on work performed by certain non-union subcontractors at job sites run by defendant). *See* [46]. The parties dispute the amount of damages, attorney's fees, and interest due on this liability, and they agreed to submit the issue of damages and fees in written submissions. *See* [47, 48, 49, 50].

Plaintiffs are entitled to damages in the following categories: (1) the amount of fringe benefit contributions that should have been paid, based on the jurisdictional work (*i.e.*, work covered by the occupational jurisdiction of the union) performed by non-union subcontractors; (2) double interest on the unpaid contributions; (3)

1

auditors' fees; and (4) attorneys' fees and costs. Defendant does not dispute the hourly rates or the interest calculation methodology used by the plaintiff.

There is no dispute that defendant maintained substandard records. Therefore, plaintiffs' auditor's calculations are presumed correct. *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003). But as defendant points out, the ultimate burden of persuasion remains with the plaintiffs, and a court should not simply accept an auditor's calculation if other evidence in the case provides a more precise accounting. *See id.*

### 1.   *Fringe Benefit Contributions*

Plaintiffs calculate the amount of damages in non-union subcontracting liability by estimating the hours worked from the total amount of money the defendant paid the subcontractors for labor (often using a one-third estimate to arrive at a dollar amount for labor, and dividing that amount by the hourly wage rate) and multiplying those hours by the fringe benefit rate for the applicable time period. In one instance, a subcontractor (Timothy Wright Construction) maintained records of the actual number of hours worked, and plaintiffs' auditor calculated the contributions due by the simple arithmetic based on those hours. I address defendant's objections by each sub-contractor below.

#### a.   *Timothy Wright Construction*

The individuals employed by Timothy Wright Construction performed 434 hours of jurisdictional work for defendant, and therefore the properly calculated damages amount for this subcontractor liability is $7,161.00. Defendant does not dispute this, *see* [47] ¶ 13, [50] at 5, but points out that Timothy Wright Construction paid the fringe benefit contributions owed for that labor to plaintiffs, and those contributions were held in an escrow account for a time. Plaintiffs refunded the money to Timothy Wright because Timothy Wright did not have a written collective bargaining agreement. [49] ¶ 5. Defendant argues that the failure of the plaintiffs to hold onto the money amounts to a failure to mitigate the damages caused by defendant in using the non-union subcontractor labor. I disagree. Judge Coleman granted summary judgment on liability in favor of the plaintiffs on this issue, holding: "defendant . . . is responsible for the Wright contributions, even considering that they were initially paid to and then later returned by plaintiff." [45]. The plaintiffs' return of funds was not an act of allowing their damages to balloon after learning of defendant's breach; it was an issue between plaintiffs and Timothy Wright Construction. The damages caused by defendant's use of Timothy Wright Construction remain attributable to defendant.

### b. *Monda Window and Door Corporation*

Plaintiffs calculate the damages from defendant's use of subcontractor Monda Window and Door Corporation to be $12,449.25. Defendant does not dispute this calculation. [50] at 4–5.

### c. *Edward Don & Company*

Plaintiffs estimate that Edward Don & Company (through other subcontractors it hired) performed 540 hours of jurisdictional work installing kitchen equipment and stainless steel shelving and countertops. This is based on the $20,400 paid to the subcontractor at issue (Reid's Fire Equipment). Defendant contends that to the extent the work was for fire protection equipment, that work was not jurisdictional. [50] at 7. Plaintiffs concede that the installation of fire protection equipment is not jurisdictional work. [48] at 9. Defendant, citing testimony and documents that suggest a divide between the installation of fire protection systems and other restaurant equipment, argues that the subcontractor performed only 72 hours of jurisdictional work. [49] at ¶¶ 3–6. Defendant is not liable for damages based on the installation of fire protection systems, but based on my review of the underlying materials (to include the Berendt Deposition, [22-6], on which defendant primarily relies), I find that a clear divide between fire protection systems and jurisdictional work cannot be drawn simply from Berendt's testimony about a separation between Reid's Fire Equipment and its related entity, RB Hood. The $20,400 invoice on its face described jurisdictional work ("install restaurant equipment"), defendant failed to maintain proper records, and Berendt's recollection was unreliable.[1] I find that plaintiffs have demonstrated that $20,400 was paid for jurisdictional work, and therefore, defendants are liable for $8,910 in unpaid contributions.

### d. *Canac Kitchens*

The biggest-ticket item of liability is the amount due on the work performed by subcontractor Canac Kitchens. Plaintiffs submit that Canac Kitchens performed

---

[1] *See* [22-6] at 10–12, 16 (Berendt could not break down the $20,400 invoice into its constituent parts, could not provide the number of fire protection systems installed, and could not estimate the hours spent on fire protection installation). It is true that Berendt was certain that fire protection systems were within the $20,400 invoice; but given the informality of the separation between Reid's Fire Equipment and RB Hood in terms of office management, and Berendt's imprecise recall, I am not persuaded that Berendt's testimony provides a reliable basis to estimate the hours. The preponderance of the evidence is the invoice itself, and the risk of over-inclusion should be borne by defendant in light of its failure to maintain proper documentation.

11,161.75 hours of work, leading to $175,197.88 in unpaid contributions. Plaintiffs arrive at this amount by taking the total amount defendant paid to Canac for the jobs at issue and estimating that one third of that amount was for labor (and then dividing that amount by the hourly wage rate). Defendant counters by saying that plaintiffs have failed to meet their burden to prove that there are any unpaid contributions at all. Defendant submitted evidence that the work was performed by union workers with Qualifit Kitchens, not Canac Kitchens. Defendant posits that Qualifit, in turn, made the requisite contributions. Alternatively, defendant says that the number of hours estimated from the total amount paid is not an accurate estimate. A more reliable estimate, according to defendant, would be to look to the construction schedules tracking the work as it was performed on the job sites, and use an eight man-hour estimate from the schedules. Plaintiffs object to this methodology because it is based on documents not previously disclosed during the summary judgment briefing on liability.

Defendant submitted affidavits from Schal Bovis and Canac employees who state that the workers on the job sites were Qualifit workers, and that the fringe benefit contributions made by Qualifit appear to be for some of the same workers who worked on the Schal Bovis jobs at issue here. Defendant also submitted construction schedules that appear to chart the progress of the actual installation of the cabinets over the course of the jobs.

Plaintiffs ask me to disregard this evidence submitted by defendant as untimely. I decline to do so. Other than noting their surprise at the affidavits submitted post-summary judgment, plaintiffs do not suggest that the evidence is incredible or otherwise unreliable. The evidence is consistent with defendant's theory of the case throughout the litigation, and since Judge Coleman called for post-summary judgment damages briefing, neither side should be too surprised by evidentiary and argumentative submissions by an adversary. Instead of ignoring the evidence, the better course is to consider it in order to make as accurate a determination as possible.

I reject defendant's argument that plaintiffs have failed to meet their burden of proof with respect to proving any damages. I am not persuaded that the notion that individuals associated with Qualifit were on the job means that contributions were paid for that labor. The evidence that Qualifit made contributions is not tied to specific projects, and given defendant's failure to maintain accurate records, it is not reasonable to infer that the contributions for its jobs were covered by Qualifit. Judge Coleman found defendant liable (rejecting a similar theory advanced by defendant at the summary judgment stage), and I agree that plaintiffs have established that they have been damaged based on the evidence of: (1) defendant's payments to Canac Kitchens (which made no union benefit contributions); and (2) the absence of any

4

documentation by defendant that contributions specifically attributable to these projects were made.

I am persuaded, however, that the construction schedules provide a more reliable estimate of actual labor performed than taking one third of the total amount of money paid to Canac. The schedules set out the number of cabinets installed over time (and provide that each unit required eight man-hours of labor). Defendant submits that the schedules demonstrate that 7,832 hours were expended on the cabinet installation.

Perhaps plaintiffs are suspicious of the timing of the revelation of these schedules, but in their motion to strike the schedules, plaintiffs make no claim about their unreliability or their recent fabrication. Unless there is some reason to think the schedules under-report the time spent on the job, I find that they provide a superior measure of labor performed as compared to using one third the value of total expenditure.

Defendant submits that 1992 hours were worked from 07/06/2006 to 10/15/2006. Applying a fringe benefit rate of $14.50 for that time period, the unpaid contributions equal $28,869.50. Defendant's submission also states that 3,984 hours were worked from 02/01/2007 to 02/01/2008. Applying a $16.50 fringe benefit rate to those hours leads to an amount of $65,736. Finally, defendant's submission states that 1,856 hours were worked from 07/15/2007 to 12/30/2007. Applying a $16.50 fringe benefit rate to those hours leads to an amount of $30,624. The total amount based on these calculations is $129,225.50.

Plaintiffs have not submitted an analysis of these late-produced schedules, and they may have arguments concerning their reliability. In addition, my calculations above may not coincide with the audit period (which closed in December 2007). Therefore, the parties have leave to submit further briefing on the amount owed for the Canac Kitchens work, consistent with my findings in this order.

## 2. *Double Interest*

Defendant does not dispute the method used by plaintiffs to calculate the double interest owed, but that amount must be recalculated in light of my use of the construction schedules and not the auditor's report for the Canac Kitchens liability.

### *3.   Auditor's Fees*

Defendant did not object to the auditor-fee component to plaintiffs' calculations. Defendant is liable for $2,849.04.

### *4.   Attorneys' Fees and Costs*

Defendant notes that plaintiffs did not follow Local Rule 54.3 in petitioning for fees and costs. While not phrased as a formal objection, to the extent defendant objects to the procedure followed in this case, the objection is overruled. The matter is fully briefed, and I see no reason to insist on the Local Rule process at this stage.

Defendant's substantive objection is that plaintiffs did not prevail on most of the claims that were the subject of the initial audit. According to defendant, the initial audit claimed approximately $8 million in unpaid contributions due to work performed by some 36 subcontractors; ultimately, liability is based on 4 subcontractors, and a significantly reduced amount of unpaid contributions. Therefore, defendant argues it would be unreasonable to award attorneys' fees for work that did not advance the litigation. "[I]f a party achieves only partial success as that term is used in [*Hensley v. Eckerhart*, 461 U.S. 424, 434–37 (1983)], then the district court must determine how many hours were related to advancing the winning claims." *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546 n. 2 (7th Cir. 2009).

Defendant does not object to the reasonableness of plaintiffs' attorneys' hourly rate, and I find that the rate ($160/hour for the attorneys, $60/hour for paralegal time) is indeed a reasonable (in fact, below-market) rate.

While it may seem that plaintiffs achieved only partial success relative to their initial demand, in my judgment the time and effort expended to determine defendant's liability for unpaid contributions was reasonable. The time spent withdrawing and narrowing claims was time that defendant forced plaintiffs to spend by virtue of defendant's failure to comply with its obligations under the agreements. Defendant claimed it owed no contributions, and that required plaintiffs to pursue a number of avenues that ultimately led to a victory. "[A] prevailing party may in appropriate circumstances recover for time spent going down roads that seemed promising but turn out to be dead ends." *Montanez v. Simon*, — F.3d —, 2014 WL 2757472, at * 6 (7th Cir. June 18, 2014). That plaintiffs' victory was smaller than initially anticipated is not a partial success warranting a reduction in attorneys' fees. The investigation prior to filing suit was done to advance the litigation, and the subsequent efforts to determine the scope of liability was also necessary to advancing the winning claims. Other than making a general argument about the amount of the

fees relative to the amount of liability, defendant has not provided me with any specific line-item objections.

I have reviewed the billing records submitted by plaintiff and I find that the overall time spent over the course of the litigation was reasonable given the size of the construction projects, defendant's poor documentation and its complete denial of liability. Much of the time spent in the early phases of the case were in small increments and the records do not distinguish among subcontractor claims—and rightly so, as the plaintiffs' overall efforts to audit defendant's noncompliance were necessary steps toward the finding of liability.

As in *BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633, 642 (7th Cir. 2013), the pre-suit investigation and other post-suit efforts were all necessary to determine the scope of defendant's liability, and awarding fees "reasonably incurred ex ante even if excessive-seeming ex post" is necessary to achieve the objective of fee-shifting.

ENTER:

Date: 9/22/14

Manish S. Shah
U.S. District Judge