CHICAGO REGIONAL COUNCIL OF
CARPENTERS PENSION FUND, et al.,

Plaintiffs,

v.

SCHAL BOVIS, INC.,

Defendant.

No. 11 CV 0992

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiffs are four carpenter union fringe benefit funds. They brought an action under the Employee Retirement Income Security Act and the Labor Management Relations Act against defendant, a general contractor and a signatory to collective bargaining agreements, for failing to make payments to the funds for work performed by nonunion labor. After Judge Coleman granted plaintiffs' partial motion for summary judgment on the issue of defendant's liability for four claims of unpaid fringe benefit contributions, I assessed damages and interest for the unpaid contributions, and I awarded plaintiffs' attorneys' fees. Both parties appealed the final order. The Seventh Circuit reversed the grant of summary judgment as to two claims of unpaid fringe benefit contributions and remanded the case for further proceedings. Defendant now moves for reasonable attorney's fees and to modify the earlier fee award to plaintiffs. For the following reasons, that motion is denied in part and granted in part.

## I.    Background

Since 1983, defendant has been a party to several collective bargaining agreements with the Chicago Regional Council of Carpenters. Through this original agreement and a later agreement that was effective from 2005 to 2008, defendant became a party to several trust agreements that created fringe benefit funds for the carpenters union. The later agreement forbade defendant from hiring subcontractors for "jurisdictional work" if the subcontractors had not signed the agreement. The agreement defined "jurisdictional work" in broad terms: it encompassed carpenter's work, but it did not include work done by other unions in the Building Trades. If defendant hired non-signatories to perform carpenter's work, the agreement obligated defendant to track the hours worked by the subcontractor and to pay the funds fringe benefit contributions for each of those hours.

An audit of defendant's books from 2006 through 2007 led plaintiffs to demand from defendant eight million dollars in unpaid fringe benefit contributions, liquidated damages, and interest for thirty-six claims of work by non-signatory subcontractors. Plaintiffs pursued eight of those claims against defendant by bringing this action. Shortly thereafter, plaintiffs withdrew four claims. Defendant filed a motion for summary judgment, arguing that it was not liable to plaintiffs for unpaid contributions in the four remaining claims (Monda Window & Door, Edward Don & Company, Timothy Wright, and Canac). Defendant argued it was entitled to a judgment on the Monda Window & Door and the Edward Don & Company claims because those subcontractors performed non-jurisdictional work, which was

permissible under the agreement. Defendant noted that plaintiffs exempted other similar claims against defendant when the work involved other trade unions, meaning it was non-jurisdictional work under the agreement. Judge Coleman rejected those arguments and held that defendant did not present enough evidence about the exemptions to lead to the conclusion that plaintiffs exempted those subcontractors because of the contractual language rather than because of individualized accommodations. *See* [45] at 1.[1]

With respect to the Timothy Wright and the Canac claims, defendant argued that it should not be held liable because plaintiffs received the required fringe benefit contributions from both subcontractors. Even though Timothy Wright was unable to officially complete a union agreement because it did not secure a bond, defendant argued that Timothy Wright became a signatory through its conduct of making fringe benefit contributions to the funds. Defendant also argued that Canac was effectively the same employer as Qualifit, a union signatory, and since Qualifit made fringe benefit contributions to the funds, defendant could not be liable. Those arguments were rejected. *See* [45] at 1.

The parties submitted competing briefs on the issue of damages. Plaintiffs calculated the amount of damages by taking one-third of the total amount of money defendant paid the subcontractors (a common approach for estimating the cost of labor) and multiplying that amount by the fringe benefit rate for the applicable time period. These calculations were presumed correct because defendant maintained

---

[1] Bracketed numbers refer to entries on the district court docket.

substandard records. *See Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003). I relied on plaintiffs' calculations except for when there was other evidence in the record that provided a more precise accounting. I concluded that defendant was liable to plaintiffs for unpaid fringe benefit contributions in the following amounts: $12,449.25 for the Monda Window & Door claim; $8,910.00 for the Edward Don & Company claim; $7,161.00 for the Timothy Wright claim; and $129,225.50 for the Canac claim. I also held defendant liable to plaintiffs for $102,799.90 in double interest; for $2,849.04 in auditor's fees; and for $49,226.44 in attorneys' fees and costs that plaintiffs accrued through its pre-suit investigation and post-suit efforts, *see Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014); *BCS Servs., Inc. v. BG Investments, Inc.*, 728 F.3d 633, 642 (7th Cir. 2013). *See* [62]; [66].

Defendant appealed the grant of summary judgment with respect to the Edward Don & Company claim and the Canac claim. Plaintiffs cross-appealed the calculation of damages for the Canac claim. The Seventh Circuit reversed because: (1) the Edward Don & Company claim was non-jurisdictional work, as shown by the terms of the agreement and defendant's evidence that it was the existing practice of the Sheet Metal Workers union to install stainless steel kitchen equipment; and (2) it was an error of law to conclude that defendant could not rely on the single-employer doctrine solely because its contract was with Canac and not Qualifit, and that doctrine shielded defendant from being held liable for violating the agreement by assigning work to Canac. *Chicago Reg'l Council of Carpenters Pension Fund v.*

*Schal Bovis, Inc.*, 826 F.3d 397 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 819 (2017). As a result of this holding, plaintiffs were not entitled to any damages from defendant on the Canac claim and therefore, plaintiffs' issue on appeal was rendered moot. *Id.* at 400. The Seventh Circuit remanded the case for further proceedings and defendant filed this motion.

## II.   Analysis

### A.   Defendant's Attorney's Fees

Section 1132 of the Employee Retirement Income Security Act empowers plaintiffs to bring an action against defendant to recover unpaid fringe benefit contributions. It also permits a court to award attorney's fees in two distinct scenarios. *See* 29 U.S.C. § 1132(g).[2] Under § 1132(g)(1), a court may use its discretion to decide if reasonable fees and costs should be awarded "to either party" in any action under § 1132, except for the type of action described in (g)(2). Section 1132(g)(2) applies to actions to enforce § 1145, which governs delinquent contributions to multiemployer plans.[3] Under § 1132(g)(2), a court "shall award the

---

[2] Section 1132(g) provides: "(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party. (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g).

[3] Section 1145 states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such

plan" fees and costs for a § 1145 enforcement action "in which a judgment in favor of the plan is awarded." Simply put, (g)(1) covers every action under § 1132 "other than" the type of action outlined in (g)(2), and (g)(2) describes actions to enforce § 1145 in which a judgment was awarded in favor of the plan; the award of fees and costs is discretionary under (g)(1) and mandatory under (g)(2); and, under (g)(1) the court may award fees and costs to "either party," but under (g)(2) a court awards fees and costs only to the benefit plan.

The parties agree that this lawsuit constitutes an action to enforce § 1145 and that plaintiffs are entitled to some relief under § 1132(g)(2) as the prevailing party on the Monda Window & Door and the Timothy Wright claims. *See* [102] at 4; [106] at 3. The parties dispute whether defendant may nevertheless be entitled to attorney's fees and costs under § 1132(g)(1). Defendant argues that the Seventh Circuit "has often approved attorney's fees awards to successful defendants under either or both of these provisions." *See* [101] at 3. Plaintiffs correctly note, however, that none of the cases defendant cites in support of that statement stand for the proposition that a defendant is entitled to attorney's fees when the action is one described by § 1132(g)(2).[4]

---

contributions in accordance with the terms and conditions of such plan or such agreement." *Id.* at § 1145.

[4] Defendant mischaracterizes *Sullivan v. William A. Randolph* as a § 1132(g)(2) case, when in fact the Seventh Circuit affirmed the district court's judgment and award of attorney's fees for the defendant under § 1132(g)(1). 504 F.3d 665 (7th Cir. 2007). The other two cases defendant cites—*Stark v. PPM Am., Inc.*, 354 F.3d 666 (7th Cir. 2004) and *Little v. Cox's Supermarkets*, 71 F.3d 637 (7th Cir. 1995)—do not involve a plan that obtained a judgment in a § 1145 enforcement action and therefore are inapplicable to this case.

Plaintiffs also argue that § 1132(g)(1) "by its express terms" does not apply to this action "[b]ecause judgment was entered in favor of [plaintiffs]." [102] at 4. Defendant responds that such an interpretation would be inconsistent with the legislative history of § 1132(g). According to defendant, Congress added paragraphs (g)(1) and (g)(2) "in order to make it easier for fringe benefit funds to collect penalties and attorney's fees as a matter of right and not something which previously had been within a court's discretion." [106] at 5. Defendant emphasizes that "[n]owhere in this history did Congress state [. . .] that it intended to make any other changes by adopting these statutes so as to deprive a litigant of the right to seek a fee award against a benefit fund under either [(g)(1)] or [(g)(2)]." *Id.* at 6–7.

I agree with plaintiffs' reading of the statute and I do not find the legislative history to require a different reading. Although there is no authoritative case law on the precise question defendant raises, the plain language of the statute is clear: § 1132(g)(1) only operates in cases that are not lawsuits described in § 1132(g)(2). Since § 1132(g)(2) refers to actions to enforce § 1145 where the plan has obtained "a judgment" in its favor, § 1132(g)(1) does not apply to such actions. The congressional intent reflected in the legislative history emphasizes that § 1132(g)(2) was intended to make fee awards in favor of plans mandatory; nothing about that intent sheds light on whether defendants should be awarded fees when the judgment was in favor of the plan.

Section 1132(g)(2) does not explicitly forbid defendants from recovering attorneys' fees, but that does not mean that § 1132(g)(1) permits it. Discretionary

awards are authorized by § 1132(g)(1), except in cases—such as this one—described by § 1132(g)(2). Since § 1132(g)(1) does not apply in such cases, there is no statutory authority for an award of fees to defendant here, and I conclude that the absence of authority precludes defendant's request.

In reply, defendant also remarks that: "a compelling argument can be made under [§ 1132(g)(2)] that Defendant is probably more of a 'prevailing party' in this case than are the Plaintiffs." [106] at 3. This argument is unavailing. Section 1132(g)(2) refers to "*a* judgment in favor of the plan." (emphasis added). It does not require that a judgment in its entirety favor the plan on all claims raised by the plan; thus, if plaintiffs obtained a judgment, it is irrelevant whether defendant successfully pared back the extent of liability. This remains true even if plaintiffs had raised each subcontractor claim as a separate count in the complaint because there would still be *a judgment* in favor of the plan.

In sum, when the plan obtains a judgment in a § 1145 enforcement action, § 1132(g)(1) does not apply, and § 1132(g)(2) does not permit the court to use its discretion to award defendant fees and costs. Since the judgment, as modified by the Seventh Circuit, was in favor of the plan, plaintiffs are entitled to attorneys' fees and defendant is not. Defendant's motion for attorney's fees is denied.[5]

---

[5] It may be counterintuitive that a litigant with more "wins" in its column than "losses" should be the one that the court orders to pay the other's fees, but whatever tension this decision brings to the surface should be resolved by Congress. Moreover, the reasonableness of the fee award in favor of the plan remains a consideration, and it should limit the potential for distorted outcomes. As discussed below, in a case such as this it would not be reasonable to award the plan all the attorneys' fees it spent pursuing a defendant who ultimately owed only a small fraction of the plan's estimated damages.

## B.      Plaintiffs' Fee Award

District courts calculate fee awards first by determining the "lodestar"—the sum of hours reasonably spent on the case multiplied by a reasonable hourly rate. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). If necessary, district courts adjust the lodestar based on equitable considerations such as the degree of success or the results obtained from litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).[6] In light of the Seventh Circuit's holding that defendant was not liable for two of the four claims, defendant argues that the fee I previously awarded to plaintiffs should be reduced to exclude work by plaintiffs' attorneys on all claims except the Monda Window & Door and the Timothy Wright claims.

The Supreme Court denied plaintiffs' petition for certiorari, so there can be no dispute that the amount of the judgment must be reduced by the damages attributable to the Edward Don & Company and the Canac claims. Plaintiffs argue that I "already properly rejected" defendant's position that the fee award should be reduced due to plaintiffs' failure to obtain an award of damages for the thirty-six claims in the original audit. [102] at 6.

---

[6] In *Hensley*, the Supreme Court identified twelve factors for district courts to consider in calculating a reasonable fee: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 461 U.S. at 430 n.3.

In my earlier decision, I acknowledged that "it may seem that plaintiffs achieved only partial success relative to their initial demand," but I concluded that the time plaintiffs spent withdrawing and narrowing its claims from thirty-six to eight, and finally to four, was reasonable. *See* [62] at 6. The Seventh Circuit's decision has altered one of the underlying premises of my reasoning—previously, plaintiffs were the prevailing party on all four subcontractor claims they raised in the motion for summary judgment; but now, plaintiffs are the prevailing party on only two of the four claims, and small-value claims at that.

When the plaintiff only achieves a partial success, the lodestar amount may be excessive. *Illinois Welfare Rights Org. v. Miller*, 723 F.2d 564, 567 (7th Cir. 1983). I now conclude that it would be excessive to award plaintiffs the full amount of the requested fees. It was reasonable for plaintiffs to pursue multiple avenues when auditing defendant because of the inadequacy of defendant's books and records, but the results obtained for the plans are too small to justify the original fee award. In cases of partial success, "the court may adjust the award either by identifying specific hours that should be eliminated or by simply reducing the overall award to reflect the plaintiff's limited success." *Id.* Under *Hensley*, a claim that is distinct "in all respects" from the successful claim should be treated as unrelated to the successful claim; therefore, any time the attorney spent working on the distinct claim would not have been in furtherance of the successful claim and should not be included in the fee award for the successful claim. 461 U.S. at 440. Conversely, when a claim is based on a common core of facts or related legal

10

theories such that the action cannot be divided into discrete claims, *Hensley* directs the district court to consider the weight of the overall relief in relation to the hours plaintiff reasonably spent litigating the action. *Id.* at 435.

This case may fall in the first category; it involves discrete claims related to different subcontractors that each worked a unique amount of hours at various rates for defendant. The legal theories also differed amongst the claims: the Monda Window & Door and the Edward Don & Company claims both involved a question as to whether the work those subcontractors performed was "jurisdictional work" under the agreement; the Timothy Wright claim turned on whether that subcontractor could be considered as a union signatory; and the Canac claim depended on how the single-employer doctrine applied to this set of facts. The case may also fit in the second category because: (1) the audit reasonably encompassed multiple potential subcontractor claims that needed to be explored to identify the successful ones; (2) whether defendant breached the trust agreements for the four plaintiff funds is a common legal and factual theory; and (3) the complaint alleged overarching legal claims about defendant's breach of the agreements. An across-the-board reduction to adjust the lodestar for the minimal damages recovery achieved may be warranted.

Plaintiffs must file an amended fee petition that accounts for the time its attorneys spent working on the Monda Window & Door and the Timothy Wright claims, and that addresses the weight of the overall relief in relation to the total hours spent litigating the entire action. Plaintiffs shall also submit recalculated

damages, penalties, and costs to account for the judgment as modified by the court of appeals. Defendant's motion to reconsider the earlier fee award is granted.

## III. Conclusion

Defendant's motion for attorney's fees and to modify the court's earlier fee award to plaintiffs, [100], is denied in part and granted in part. It is denied with respect to defendant's motion for attorney's fees. It is granted insofar as the earlier fee award to plaintiffs is vacated, and plaintiffs shall file an amended fee petition. The amended fee petition (with revised damages, penalties, and costs calculations) shall be filed by 4/21/17. Defendant shall respond to the fee petition by 5/5/17, and plaintiff may reply by 5/19/17.

ENTER:

Manish S. Shah
United States District Judge

Date: 3/31/2017